UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARYL FAVORS,

        Plaintiff,

  v.

CITY OF HIGHLAND PARK, GRETTA
CONTRERAS, HOLLIS SMITH, and MAURICE
WILLIAMS,

        Defendants.

Case No. 11-13321
Honorable Julian Abele Cook, Jr.

## ORDER

In this lawsuit, the Plaintiff, Daryl Favors, has accused the Defendants, City of Highland Park ("City") and three members of its law enforcement department[1] of violating his civil rights in violation of 42 U.S.C. § 1983.

In count one of the Complaint, Favors charges the Defendants with utilizing excessive force against him in violation of his rights under the Fourth Amendment. Count two sets forth a state law claim for assault and battery.[2] Count three proclaims liability against the City because of its alleged failure to (1) properly train and supervise its municipal employees, and/or (2) establish and maintain a set of customs and policies that, when implemented would preclude constitutional violations

---

[1] In addition to the City, Favors has identified Gretta Contreras, Hollis Smith, and Maurice Williams as Defendants in this action.

[2] The Court has supplemental jurisdiction over Favors' state law claims pursuant to 28 U.S.C. § 1367(a) as they are a part of the same "case or controversy" as the § 1983 claim.

Page 1

against citizens.

I.

In his complaint, Favors asserts that he was wrongfully detained by law enforcement officers in Highland Park, Michigan, without justification or an explanation. In describing this encounter with the Highland Park police officers, he stated "[a]t first it was one cop car. And then after I started driving away from them, that's when about five or six cop cars and a helicopter was following behind me." Favors, in recounting the incident, stated that because it was his intention to drive directly to his mother's house, he did not stop for the police cars. A chase ensued, and his car was ultimately blocked from further advancement by other police cars.

An unidentified officer directed Favors to turn off the motor in his car and put the keys on the top of the car's hood. Favors said that he complied with this command. He stated that the officers then commanded him to slowly get out of the car and lie down on the ground. After approximately four to five minutes, Favors exited his car. Favors testified that when he was out of the car, the officers held him down, used chemical spray in his eyes, punched him, twisted his ankles, threatened to shoot him, and beat him. Favors testified that he heard approximately ten to thirteen different voices but could not see how many police officers were present.

Favors testified that he did not know the identity of the officer who handcuffed him, but noticed that one of them was of Mexican descent with a moustache. Favors testified that one female officer was present but that she did not touch him. Shortly thereafter, Favors was placed in a police car which was hot and his handcuffs were very tight. Favors asserts that he was subsequently charged with several felonies arising out of this incident, but that the case was not prosecuted because he was found to be incompetent to stand trial.

II.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d

283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III.

Favors's complaint alleges the violations of certain fundamental rights that are guaranteed by 42 U.S.C. § 1983, as well as state law violations. The Court will address the federal and state law claims separately.

To bring a claim under 42 U.S.C. § 1983, facts must be set forth and "establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Miller v. Sanilac County*, 606 F.3d 240, 247 (6th Cir. 2010) (internal citation omitted). The Defendants do not dispute that at the time of the incident, Gretta Contreras, Hollis Smith, and Maurice Williams were police officers acting under color of state law.

"[T]he right to be free from excessive force is a clearly established Fourth Amendment right." *Binay v. Bettendorf*, 601 F.3d 640, 652 (6th Cir. 2010) (internal quotation marks and citation omitted). To hold an individual law enforcement officer liable for the use of excessive force, a plaintiff must show that the alleged offending officer "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Binay*, 601 F.3d at 650. "As a general rule, mere

presence at the scene of [the alleged constitutional violation], without a showing of direct responsibility for the action, will not subject an officer to liability." *Id*. Additionally, "[e]ach defendant's liability must be assessed individually based on his own actions." *Id*.

With respect to Gretta Contreras, the Court finds that there is no basis to find that she violated Favors's Fourth Amendment rights. He testified at his deposition that there was only one female officer present and that she never touched him. (Dep. 78). Favors offers no evidence that Contreras was a supervisor of the other officers or that she owed him a duty of protection. Viewing the facts in the light most favorable to Favors, Contreras was merely present at the scene and cannot be held responsible for his injuries. *See Binay*, 601 F.3d at 650 (mere presence, without a showing of direct responsibility, will not subject an officer to liability). Contreras is entitled to the entry of a summary judgment on this claim.

With respect to Smith and Williams, Favors has not established that they were more than "merely present" at the time of the incident. At his deposition, Favors stated that he remembered "seeing a female and a white officer that [had a] bald head, and I also saw another black officer." At a later time in his deposition, Favors stated that he identified the voices of Smith and Williams as being similar to those that were heard by him at the time of the incident.

In an effort to bolster his claims against Smith and Williams, Favors submits that these officers had duties to intervene and protect him from the use of excessive force by other law enforcement officers. *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982). The *Bruner* plaintiff was hit numerous times with a flashlight, struck, kicked, and dragged down an alley by officers, while other officers did nothing to stop the assault. *Id* at 424. The court in *Bruner* held that onlookers could be held liable because "it is not necessary, in order to hold a police officer liable under § 1983,

to demonstrate that the officer actively participated in striking a plaintiff." *Id*. at 426.

"Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Favors has not introduced any evidence that Williams or Smith observed excessive force or had reason to know it was being used. Still further, Favors has not demonstrated that the individual Defendants had the opportunity and the means to prevent the alleged harm from occurring. Williams testified at his deposition that he did not see any officers mistreating Favors. Williams also stated that he was checking Favors' car for weapons and, as a consequence, he did not hear or see any struggle with Favors. With respect to Smith, Favors indicates that he was only able to identify Smith after seeing him in court following the incident. A review of the evidence clearly indicates that Favors has not established that Smith observed the alleged mistreatment and could have prevented the harm from occurring. Favors has not established that Smith and Williams were directly involved in the alleged constitutional violations. At most, they were present. However, as discussed above, mere presence is insufficient to establish liability. Therefore, Williams and Smith are entitled to summary judgment on this claim.

Favors also asserts a claim against the City for (1) failing to properly train and supervise its municipal employees, and (2) the implementation and maintenance of customs and policies that resulted in constitutional violations. The City disagrees, contending that it is entitled to the entry of a summary judgment because Favors cannot satisfy the basic standards of municipal liability. A municipality may be liable for the action of an employee under § 1983 if the accused was acting pursuant to a policy or custom of the municipality. *Monell v. Department of Social Services*, 436

U.S. 658 (1961). A local government is only liable under this statute for its own wrongdoing and not under any theory of respondeat superior. In addition to liability based on policy or custom, a municipality may be liable for its failure to train employees. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). "[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id*.

As found above, Favors has not established that any of the identified police officers violated his constitutional rights. Therefore, the City is entitled the entry of a summary judgment. *Watkins v. City of Battle Creek,* 273 F.3d 682, 687 (6th Cir. 2001) ("if no constitutional violation by the individual defendant is established, the municipal defendants cannot be held liable under § 1983.")

Finally, the Court now turns to Favors's claims of assault and battery against the Defendants. Assault is the "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent ability to accomplish." *Van Vorous v. Burmeister*, 262 Mich. App. 547, 482 (2004). Battery is the "willful or offensive touching of another person which results from an act intended to cause such contact." *Id*. at 483.  As noted above, Favors has not produced any evidence that Williams, Smith, and Contreras are responsible for his alleged mistreatment. Therefore, the Defendants are entitled to summary judgment on this claim.

For the reasons stated above, the Defendants' motion for summary judgment is granted in

its entirety. (ECF 31).

    IT IS SO ORDERED.

Date: May 2, 2013                                                  s/Julian Abele Cook, Jr.  
                                                                          JULIAN ABELE COOK, JR.  
                                                                          U.S. District Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on May 2, 2013.

                                                                                                     s/ Kay Doaks  
                                                                                                     Case Manager